UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DR. JOSE EMMANUEL LOPEZ VELARDE LUNA, § § § Plaintiff, § § v. § § JAIME DEL COLLINS, an Individual d/b/a § EKIJOINT, GOLD USA and as OPTIWIZE § HEALTH and SOUNDNESS SOLUTIONS, § L.L.C.; and OPTI JOINTS LLC, a Texas § Limited Liability Company, § § Defendants. § | SA-23-CV-358-FB (HJB) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendants' Motion to Enforce Settlement Agreement (Docket Entry 77), and the Motion to Void Confidential Settlement Agreement and Mutual Release Under Legal Defect filed by Plaintiff Dr. Jose Emmanuel Lopez Velarde Luna ("Velarde") (Docket Entry 83). Pretrial matters in this case have been referred to the undersigned for consideration. (*See* Docket Entry 60.) For the reasons set out below, I recommend that Defendants' motion (Docket Entry 77) be **GRANTED IN PART**, that Velarde's motion (Docket Entry 83) be **DENIED**, and that this case be **DISMISSED**.

**I.   Jurisdiction.**

Plaintiff's complaint alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., misappropriation of trade secrets in violation of 18 U.S.C. §1836(b)(1), and related state law claims. (Docket Entry 1, at 1–2.) The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338, and over the pendent state claims pursuant

to 28 U.S.C. § 1367.  (*See id.* at 3.)   I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II.     Background.

The parties' disputes arise from a 2020 distribution agreement between Velarde and Defendant Jaime Del Collins ("Collins") and (*See* Docket Entry 1, at 10; Docket Entry 77, at 2.) The dispute has led to litigation in state and federal court, and the parties have twice announced a settlement of their disputes.   In the motions before the Court, the parties dispute whether the latest announced settlement should be enforced.

In 2021, Collins filed suit in Bexar County state court against Velarde and his company, Plaintiff Ekijoint Gold, LLC ("Ekijoint Gold"), for breach of the 2020 distribution agreement. The parties settled the matter, and signed a written settlement agreement which included, among other things, a limited meditation-and-arbitration clause.  (Docket Entry 77, at 2; Docket Entry 77-3, at 3–4.)

In 2023, Plaintiffs brought the current suit in this Court against Collins and Defendant Opti Joints, LLC ("Opti Joints").  (Docket Entry 1.)   Based on the previous settlement agreement, Collins moved to compel arbitration and stay this case   (Docket Entry 40.)   On January 5, 2024, the undersigned granted the motion in part, ordering mediation and arbitration of some claims and otherwise staying the case pending the outcome of those proceedings.   (Docket Entry 52.)

On March 21, 2024, Plaintiffs' counsel filed an advisory announcing that the parties had reached a settlement of the entirety of their dispute in advance of the arbitration. (Docket Entry 55.)   The advisory represented that, within 30 days, formal settlement papers would be prepared, and that a joint motion to dismiss the case would be filed.  (*Id.*)   Based on counsel's

representations, the undersigned returned the case to the District Court, and the District Court ordered the parties to submit the appropriate settlement documents by April 22, 2024. (Docket Entries 56, 57.)

On the day that the settlements documents were due, the parties notified the Court that they were unable to finalize the documents confirming their settlement agreement, and counsel for Plaintiffs moved to withdraw from the case. (Docket Entries 58, 59.) The District Court re-referred the case to the undersigned; after a hearing on the matter, the undersigned issued an order granting counsel's motion to withdraw and giving Plaintiffs 60 days to retain new counsel. (Docket Entries 60, 63, and 64.)

Despite repeated extensions of the deadline to retain new counsel, Plaintiffs never did so. As Ekijoint Gold could not proceed without counsel, the undersigned recommended that its claims be dismissed without prejudice; the District Court adopted that recommendation, leaving Velarde, now *pro se*, as the only Plaintiff in the case. (Docket Entries 73, 75.)

Defendants then filed the instant motion to enforce the settlement agreement that had been reached when the parties announced their settlement to the Court more than a year earlier. (Docket Entry 77.) Defendants attached to the motion the written settlement agreement, which was signed by counsel for all parties on March 20, 2024—the day before the parties announced their settlement to the Court. (*See* Docket Entries 77-8, 77-11.) Velarde responded by filing a motion to void the settlement agreement (Docket Entry 83); Defendants have responded in opposition to that motion (Docket Entry 84).

### III. Discussion.

"A district court has inherent power to recognize, encourage, and when necessary enforce

3

settlement agreements reached by the parties." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (citation modified). If, as in this case, the disputed "settlement involves a right to sue derived from a federal statute," then "federal law . . . governs the validity of the settlement." *Macktal v. Sec'y of Lab.*, 923 F.2d 1150, 1157 n.32 (5th Cir. 1991).

Under federal common law, "[a] settlement agreement is a contract." *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). Thus, a "binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (quotation omitted). The party seeking to enforce the agreement must prove "that the parties reached an agreement regarding all material terms." *Lozano v. Metro. Transit Auth. of Harris Cnty.*, No. H-14-1297, 2016 WL 3906295, at *3 (S.D. Tex. July 19, 2016).

"Federal law does not require a written, signed agreement." *Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 WL 4700896, at *5 (S.D. Tex. Aug. 13, 2020). And "[i]f the parties' communications indicate that an agreement had been reached and there are no material terms outstanding to negotiate, a district court can enforce a settlement agreement made by email." *Peacock v. Deutsche Bank Nat'l Tr. Co.*, No. 4:20-cv-3945, 2022 WL 1185173, at *3 (S.D. Tex. Apr. 19, 2022). Additionally "courts routinely enforce settlement agreements even where the precise wording of a release has not been finalized," and "[t]his remains true even when one of the parties ultimately fails to sign the finalized release." *In re Deepwater Horizon*, 786 F.3d 344, 357 (5th Cir. 2015) (quotation omitted). And if the parties agreed to all the material terms of the settlement, each party "remains bound by the terms of the agreement" even if he "changes his mind

when presented with the settlement documents." *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. Dec. 1981).

In this case, the parties entered into a written settlement agreement that was signed by counsel for all parties. (Docket Entry 77-11.) On its face, the agreement purports to settle the parties' entire dispute and sets out all the terms of the settlement (*id.*); Velarde makes no argument that material terms are missing. Instead, Velarde seems to argue (1) that the settlement agreement was crafted by defense counsel after his counsel had withdrawn from the case, and (2) that it was never approved by the parties themselves. (Docket Entry 83, at 3–4.)

Velarde's first argument is frivolous. The agreement is dated March 20, 2024, a month before counsel withdrew from the case; that date accords with the email exchange between counsel from the same day, in which Velarde's counsel states that Plaintiffs have accepted Defendants' settlement offer, and in fact transmits the signed agreement back to defense counsel. (Docket Entries 77-11; Docket Entry 77-10, at 1, 3.) Velarde does not dispute these dates or any other information in the e-mail exchange; nor does he dispute the e-mail from his attorney to the arbitrator on the same day, reporting that the case had settled. (*See* Docket Entry 77-12, at 1–2.)

Velarde's second argument, that he did not agree to the settlement reached by his counsel, fares no better—at least not for purposes of ending this litigation. "[A]n attorney of record is presumed to have authority to compromise and settle litigation of his client," absent "affirmative proof" to rebut that presumption. *Quesada v. Napolitano*, 701 F.3d 1080, 1083 (5th Cir. 2012). Velarde has submitted a copy of Plaintiffs' engagement agreement with counsel, which Velarde argues provides counsel with the power of attorney but does not authorize counsel to enter into or sign a settlement agreement. (Docket Entry 83, at 2, 5–10.) While the agreement may not give

counsel express settlement authority, it is far from "affirmative proof" that he was not authorized to the sign off on the emailed terms of the agreement sent by defense counsel. To the contrary, the course of the e-mail exchanges between counsel for the parties that day plainly suggests that they attorneys were authorized to make and accept settlement offers on behalf of their clients. (*See* Docket Entry 77-10.) With respect to counsel's authority to sign the settlement, any dispute is irrelevant; as noted above, federal law does not require a signed agreement if the parties' communications indicate that an agreement has been reached and there are no missing material terms. *See Lee*, 2020 WL 4700896, at \*5; *Peacock*, 2022 WL 1185173, at \*3.

Even if, in retrospect, there were some issue as to the scope of counsel's authority, his allegedly mistaken representation to the Court that the dispute had been settled and the case would be dismissed remains binding on Velarde. (*See* Docket Entry 55.) "[I]t has long been held, particularly in civil litigation, that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir. 1985) (internal citation omitted). In this case, Plaintiffs' counsel made the unequivocal statement in his notice that the parties had settled the case, and that an agreed motion to dismiss would be submitted based on that settlement. (Docket Entry 55.) Velarde is bound by these representations. *See id.*; *see also Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) ("Petitioner voluntarily chose this attorney as his representative, . . . and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Laird v. Air Carrier Engine Serv., Inc.*, 263 F.2d 948, 953 (5th Cir. 1959) ("An attorney . . . . speaks for and as the client."). Accordingly, even if there is some question as to whether the parties agreed as to all the terms of the settlement, the Court and

Defendants are entitled to rely on counsel's representation as to the agreement to dismiss the case.[1] If counsel somehow acted beyond the scope of his authority to Velarde's detriment, "the proper recourse . . . is to seek malpractice damages from the attorney." *Pryor*, 769 F.2d at 289; *see Link*, 370 U.S. at 634 ("[T]he client's remedy is against the attorney in a suit for malpractice, . . . . [not] visiting the sins of [his] lawyer upon the defendant.").

## IV.     Conclusion and Recommendation.

For the reasons set out above, I recommend that Defendants' Motion to Enforce Settlement Agreement (Docket Entry 77) be **GRANTED IN PART**, that Velarde's Motion to Void Confidential Settlement Agreement (Docket Entry 83) be **DENIED**, and that this case be **DISMISSED**.

## V.      Instruction for Service and Notice for Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed within **14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or

---

[1] In response to Velarde's motion, Defendants argue that later exchanges between Velarde and defense counsel show that Velarde himself has in fact agreed to all the terms of the March 20, 2024, settlement. (*See* Docket Entry 84, at 2–3; *see* Docket Entry 77-16.) Although Defendants' argument appears well-taken, the Court need not reach this issue to resolve the case.

recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 29, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge